UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Adam ORONA,<br>CDCR #BF4477,<br><br>                              Plaintiff,<br><br>v.<br><br>BALLARD, Corrections Officer;<br>LAZARO, Corrections Officer; John DOE<br>1, Corrections Officer; John DOE 2,<br>Corrections Officer/Policymaker,<br><br>                              Defendants. | Case No.:  26-cv-02875-WQH-GC<br><br>**ORDER (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND (2) SCREENING PRO SE § 1983 COMPLAINT**<br><br>**(ECF Nos. 1, 2)** |

HAYES, Judge:

In this civil-rights suit filed under 42 U.S.C. § 1983, Plaintiff Adam Orona, proceeding pro se while housed at the Richard J. Donovan Correctional Facility ("RJD"), claims corrections officers violated his Eighth and Fourteenth Amendment rights when they, inter alia, allowed his elbow to be crushed in closing prison cell door and ignored his cries for help. (ECF No. 1 at 3–4, 8–12.) Orona did not pay the filing fee but instead has filed a motion to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915(a). (ECF No. 2.)

As explained below, the Court **GRANTS** Orona's IFP motion and **SCREENS** his Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Court finds that Orona

1

adequately alleges Eighth Amendment claims against Defendants Ballard, Lazaro, and Doe 1 in Count One. But the Court finds that he fails to state any plausible claim for relief in Count Two against Doe 2. Therefore, the Court **ORDERS** Orona to either file an Amended Complaint that addresses the pleading deficiencies discussed below, or a Notice of Intent to Proceed with the Eighth Amendment claims alleged against Defendants 1–3 in his current Complaint.

## I.    MOTION TO PROCEED IFP

Anyone instituting a civil action in a district court of the United States must typically pay a filing fee of $405—consisting of a $350 statutory fee plus an additional $55 administrative fee—although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP. *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' . . . the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners." *Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 767 (9th Cir. 2023). Namely, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner 'shall be required to pay the full amount of a filing fee.'" *Id.* (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)). First, prisoners must submit a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). Next, the Court assesses an initial payment of 20% of the greater of (a) "the average monthly deposits to the prisoner's account" or (b) "the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint." *See* 28 U.S.C. §§ 1915(b)(1) & (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Unless the prisoner has no assets, prisoners who proceed IFP must pay the initial

2

partial assessed fee and whatever balance remains in installments regardless of whether their case is ultimately dismissed. 28 U.S.C. § 1915(b)(1) & (2); *Bruce*, 577 U.S. at 84.

Orona has provided a trust account statement and certificate from RJD showing he had an average monthly balance of $44.94 during the 6-month period preceding the filing of his Complaint, average monthly deposits of $35.34, and an available balance of $26.06 at the time of filing. (ECF No. 3 at 4.) Based on this showing, the Court **GRANTS** Orona's motion to proceed IFP and assesses an initial partial filing fee of $8.99 pursuant to 28 U.S.C. § 1915(b)(1) but **DIRECTS** the Secretary of CDCR to collect this initial partial fee on the Court's behalf only if sufficient funds are available in Orona's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2022) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The CDCR must thereafter collect the full balance of the $350 total fee owed in this case and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

## II.   SCREENING

### A.   Standard of Review

Because Orona is a prisoner and is proceeding IFP, his Complaint also requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that

the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rule of Civil Procedure 8 "prescribes the information a plaintiff must present about the merits of his claim at the outset of litigation." *Berk v. Choy*, 607 U.S. 187, 193 (2026). Together Rules 8 and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Dismissal "under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Valame v. Trump,* 157 F.4th 1172, 1173 (9th Cir. 2025) (per curiam) (citing *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)).

**B.     Factual Allegations**

On July 20, 2024, at 9:00 a.m., Orona was in Cell 226 of Building 19 in RJD. (ECF No. 1 at 8.) During release to programming, when Orona's "body was half[]way out of the

cell as he was exiting with his belongings," his cell "door began to shut." *Id.* Orona yelled out to Correctional Officer Ballard [Defendant 1], who was in the lookout tower "looking directly at plaintiff" to "'watch out,'" but Ballard "continued to close the door." *Id.*

Orona "reenter[ed] the cell to avoid the door," but "it crushed his right elbow while his body was inside and [his] right forearm was out[side]." *Id.*

Orona "holl[ered] '226' through the crack in the door . . . to Correctional Officer Lazaro [Defendant 2] and Doe 1 [Defendant 3]" who were "twenty-five feet away at their pod[i]um." *Id.* Orona alleges he then yelled "'open up,' 'I'm stuck,' and '226' at least[,] periodically, ten times, while flashing his light as the pain made him scream when yelling." *Id.* at 8–9. Defendants "ignored him" and "continued to ignore him." *Id.* at 9.

"After about a minute, [Orona's] cell[mate,] also inside the cell, flashed his lamp toward defendants Ballard, Lazaro and Doe 1 out the window as they," allegedly, "pretended to be unaware." *Id.* Orona's cellmate "also yelled '226' asking for help[,] saying 'he's stuck' several times." *Id.* Other prisoners laughed at Orona and one yelled "'226[,]' telling defendants 'he's stuck' more than once." *Id.* Defendant 1–3 "continued to ignore [Orona] and released the rest of all the building's sections before finally releasing plaintiff from the door. He was unreasonably crushed for approximately two minutes." *Id.*

Since the crushing, no official has apologized to Orona and Ballard and Lazaro have "even mocked plaintiff at times." *Id.* Orona alleges he's "sought medical treatment periodically, to date, regarding serious permanent injury sustained by this incident." *Id.*

Orona alleges that correctional "officers often exp[e]dite release processes[,] occasionally blocking inmates into their cells and even smashing them." *Id.* at 10. Orona further alleges that "Doe 2 [Defendant 4] creates final policy" related to the closing of cell doors. *Id.* "Despite [o]the[r] cell door crushings during exp[e]dited releases leading up to plaintiff's incident, defendant Doe 2 never implemented adequate final policy mitigating this known risk to inmate safety." *Id.*

Orona seeks relief under 42 U.S.C. § 1983, alleging, in Count 1, that Defendants Ballard, Lazaro, and Doe 1 violated his Eighth and Fourteenth Amendment rights by

26-cv-02875-WQH-GC

"maliciously ignoring [Orona's] cries for help" and failing "to reasonably respond to [a] known risk of [his] [being] crushed in the door." *Id.* at 3. In Count 2, Orona further contends Doe 2, the "final policymaker responsible for the conditions and operations of" RJD, (ECF No. 1 at 2), violated his Eighth and Fourteenth Amendment rights through "deliberate indifference . . . to the substantial risk of serious inmate-door-crushings." *Id.* at 4.

Orona seeks $250,000 in compensatory damages and undetermined punitive damages as well as injunctive relief to prevent (1) "inmates in doors," (2) "ignoring inmates' cries for any reason," and (3) "practicing exp[e]dited releases." *Id.* at 7.

**C.    Discussion**

**1.    Eighth Amendment Claims**

To state a claim under 42 U.S.C. Section 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035–36 (9th Cir. 2015). As currently pleaded, the Court finds that Orona's Complaint alleges a plausible Eighth Amendment claim against Correctional Officers Ballard, Lazaro, and Doe 1 sufficient to survive the "low threshold" set for *sua sponte* screening as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (for claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.") (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted); *see also Caddell v. Gittere*, No. 3:19-CV-00053-MMD-WGC, 2019 WL 11825611, at *2–*3 (D. Nev. Nov. 25, 2019) (finding allegations that correctional officer deliberately pinned prisoner's head in steel cell door while he reached for a roll of toilet paper sufficient to "state[] a colorable excessive force claim" under the Eighth Amendment).

Although Orona's Complaint only indicates that Defendant Ballard closed the cell door, he does allege that Lazaro and Doe 1 failed to act for minutes even while he and others yelled for help. (*See* ECF No. 1 at 8–10.) Their alleged inaction and participation in the use of force against Orona, or their failure to act, suffices to meet the applicable pleading standard. *Hudson*, 503 U.S. at 6–7 (an excessive force claim requires a showing that the defendant acted "maliciously and sadistically to cause harm."). In other words, to the extent that Orona's allegations also assails the conduct of Defendants Lazaro and Doe 1, Orona plausibly alleges a failure to intervene. An officer can violate an inmate's constitutional rights by failing to intervene to stop other officers from using excessive force if they are also alleged to have had enough time to observe what was happening and the opportunity to intervene but failed to do so. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995); *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022).

Likewise, even if read as a failure to protect claim, Orona's claims against Defendants Lazaro, and Doe 1 survive *sua sponte* screening. To plead such a claim, Orona must allege facts sufficient to plausibly show that officials acted with deliberate indifference to a substantial risk of harm to his health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Orona must allege each prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety[.]" *Id.* at 837. Orona claims his elbow was stuck in the cell door for several minutes, time enough for multiple inmates to call for Defendants' attention. These allegations are sufficient to support the reasonable inference that both Lazaro and Doe knew his arm was stuck, knew he was in pain, and had both the time and opportunity to intervene. *See Robins*, 60 F.3d at 442.

For these reasons, the Court finds that Orona has sufficiently stated Eighth Amendment claims for relief against Defendants Ballard, Lazaro, and Doe 1. *See Iqbal*, 556 U.S. at 678.[1]

---

[1] The Court is liberally construing Orona's cell-door smashing claims to arise under the Eighth Amendment's prohibition of cruel and unusual punishment—and not as separate cause of action under the

## 2. Policymaker Claims

Orona also contends Doe 2, who "creates final policy[,]" "never implemented adequate final policy mitigating this known risk to inmate safety." (ECF No. 1 at 10–11.) A supervisory official is liable under § 1983 if "there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (citation and internal quotation marks omitted). A complaint asserting supervisory liability "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Notably, when supervisory liability is alleged to exist without any personal participation, the official must have implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), *abrogated on other grounds*, *Farmer*, 511 U.S. at 825. Proving liability for a policy further entails demonstration that a plaintiff's "deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010).

The Court finds that Orona's conclusory claims against Doe 2 are insufficient to plausibly suggest any individual involvement or causal connection between his or her

---

Fourteenth Amendment's Due Process Clause. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1986) ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment."); *cf. Tennessee v. Enriquez*, No. 25-cv-2026-LL-JLB, 2025 WL 3079054, at *3 (S.D. Cal. Nov. 4, 2025) (dismissing Due Process claim at screening as redundant to Eighth Amendment claims arising from same factual allegations).

actions and the alleged constitutional violation. Not only does Orona not specify the precise role and responsibilities held by Doe 2, he alleges only that Doe 2 "never implemented adequate final policy mitigating this known risk to inmate safety." *Id.* While Orona suggests that past events or correctional officer behavior required corrective policy action, such "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Accordingly, the allegations against Doe 2 are dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A for failure to state a claim. *Iqbal*, 556 U.S. at 679.

### 3.   Plaintiff's Options

Even though Orona's Complaint requires dismissal with respect to the claims against Doe 2, he may file an Amended Complaint that corrects all the deficiencies of pleading identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

If Orona chooses to file an Amended Complaint, that pleading will be subject to another preliminary screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) before the Court determines whether U.S. Marshal Service upon any Defendant is warranted. If Orona does nothing, the Court will dismiss the case based on his failure to prosecute in compliance with a court order.

## III.   CONCLUSION

Thus, for the reasons explained, the Court:

1.      **GRANTS** Orona's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2.      **ORDERS** the Secretary of the CDCR, or his designee, to collect from Orona's trust account the $8.99 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's

income to the Clerk of the Court each time the amount in his account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3.  **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4.  **DISMISSES** Orona's claims against Defendant Doe 2 based on his failure to state a plausible claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

5.  **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either:  (A) file a Notice of Intent to Proceed with his excessive force claims against Defendants Ballard, Lazaro and Doe 1 only; *or* (B) file an Amended Complaint that corrects all the deficiencies of pleading identified in this Order.

If Plaintiff files a Notice of Intent to proceed against, Ballard, Lazaro and Doe 1, the Court will direct the U.S. Marshal to effect service of process upon the *named* Defendants[2] on his behalf pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

If Plaintiff instead chooses to amend, his new pleading must be clearly titled as his

---

[2] While the Court finds Plaintiff's Eighth Amendment allegations involving Doe 1 are sufficiently pleaded to survive screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), *see Wilhelm*, 680 F.3d at 1123, Orona would have to first identify this person, submit an amended pleading, and/or file a motion to substitute Doe's true name, *and* request U.S. Marshal service upon them as required by Federal Rule of Civil Procedure 4 before any claims alleged against Doe 1 may proceed. *See Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (1995) (Doe defendants must be identified and served within [90] days of the commencement of the action against them); Fed. R. Civ. P. 15(c)(1)(C) & 4(m). Doe pleading is generally disfavored, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), and in most cases it is impossible for the United States Marshal to serve a party identified only as a Doe. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (In order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish[] the information necessary to identify the defendant."); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, No. 18-cv-0249-DKW-KJM, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant"). However, where the identity of parties is not known prior to filing of an action, Ninth Circuit authority permits a plaintiff the opportunity to pursue appropriate discovery to identify unknown does, unless it is clear that discovery would not uncover their identities, or the pleading requires dismissal for other reasons. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

26-cv-02875-WQH-GC

Amended Complaint, contain S.D. Cal. Civil Case No. 26-cv-2875-WQH-GC in its caption, and be complete in itself without reference to his original Complaint. Defendants not named and any claim not realleged in Plaintiff's Amended Complaint, *including the currently sufficient excessive force claim alleged against Defendants Ballard, Lazaro, and Doe 1*, will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

Dated:  July 13, 2026

_____
Hon. William Q. Hayes
United States District Court

26-cv-02875-WQH-GC